W. H. HODGES & CO., INC., v. RITTER

(February 25, 1929.   Opinion and Decree.)

Prowell, McBride & Ray, Walton P. Mouton, of New Orleans, attorneys for plaintiff, appellant.

John C. O'Connor, of New Orleans, attorney for defendant, appellee.

JONES, J.   This is a suit for $775.00, with interest and attorney's fees, on the following five promissory notes, all signed by the defendant and all endorsed by E. B. Avegno & Co., Inc.:

One note in the sum of $375.00, dated March 2, 1925, payable three months after date (June 2, 1925), to the order of E. B. Avegno & Co., Inc., with 8% interest from date until paid.

One note in the sum of $100.00, dated November 6, 1924, payable five months after date (April 6, 1925), to the order of E. B. Avegno & Co., Inc., with 8% interest from date until paid.

One note in the sum of $100.00, dated November 6, 1924, payable six months after date (May 6, 1925), to the order of E. B. Avegno & Co., Inc., with 8% interest from date until paid.

One note in the sum of $100.00, dated November· 6, 1924, payable seven months after dated (June 6, 1925), to the order of E. B. Avegno & Co., Inc., with 8% interest from date until paid.

One note in the sum of $100.00, dated November 6, 1924, payable eight months after date (July 6, 1925), to the order of E. B. Avegno & Co., Inc., with 8% interest from date until paid.

The petition makes the usual allegation that plaintiff is a holder in due course for valuable consideration, that all the notes are long past due and nothing has been paid thereon.

Defendant answered, admitting her signature to the notes and pleading payment.

The trial judge maintained the defense, dismissed the suit, and plaintiff has appealed to this court.

The record shows the following facts:

Defendant, who is engaged in the dairy business in this city, gave these notes to E. B. Avegno & Co., Inc., who operated a live stock commission business, in payment for cows which she had purchased from them; as she is ignorant of business matters, she leaves the greater part of the management of the finances of her business to George Beverung, who is so ignorant that he cannot read at all and can barely write his name. Defendant delivered the notes herein sued on to Clyde H. Hodges, (a brother of W. H. Hodges, president of plaintiff company) an officer of Avegno and Company who formerly acted as collector for his firm, but was charged on June

2, 1925, by E. B. Avegno, president of the company, with having forged a note on the 11th day of March, 1925, and subsequently became a fugitive from justice, with large defalcations charged to him; defendant and her manager, Beverung, both testify that they paid the notes in this case, and in proof of their allegations they offered in evidence the following receipts:

| Date | How Identified | Amount |
|---|---|---|
| December 3, 1924 | D-1 | $ 90.00 |
| February 2, 1925 | D-2 | 150.00 |
| February 4, 1925 | D-3 | 132.51 |
| February 5, 1925 | D-3 | 17.50 |
| March 17, 1925 | D-4 | 85.00 |
| January 13, 1925 | D-5 | 165.00 |
| April 13, 1925 | D-6 | 75.00 |
| April 9, 1925 | D-7 | 75.00 |
| June 1, 1925 | D-8 | 50.00 |
| June 8, 1925 | D-9 | 50.00 |

The first four of these receipts were signed by Clyde H. Hodges, the next two by Brown, an employee of the Avegno Company, the following two by J. T. Hodges, assistant bookkeeper of plaintiff company and the last by W. H. Hodges, president of plaintiff company. They further testify that they trusted Clyde H. Hodges implicitly, and frequently paid sums on notes to him before the notes fell due, upon his promise to bring the notes later. Though she had only made a few payments herself, she testified that she was frequently present when payments were made by Beverung, ·and Beverung, who, in spite of his ignorance, seems to have been fairly clear-headed and to have had a good memory, testified that he paid Clyde H. Hodges on the notes in suit nearly $300.00 within one week, and at another time $165.00, about three o'clock in the morning when Clyde Hodges had come up, along with Brown, plaintiff company's bookkeeper, to the dairy and begged him for money to meet an overdraft at the bank. These statements of Beverung are confirmed by the receipts. Defendant and

Beverung also testify that they had had no connections whatever with the plaintiff in this case until some time in April, 1925, but they had dealt consistently up to that time with Clyde Hodges, the collector for E. B. Avegno and Company, who repeatedly promised to deliver these notes, but failed to do so in spite of many demands.

W. H. Hodges, the president of plaintiff company, testified that they had purchased the first note sued on from Avegno and Company on March 11, 1925, and the other notes, along with four similar notes, all dated November 6, 1925, payable one, two, three and four months after date to Avegno and Company, the series of eight notes having been given in payment for one lot of cattle; ·that Avegno and Company, presumably through Clyde Hodges, their collector, collected some of the money due on the notes held by them and turned the amount in to them.

Plaintiff introduced in evidence carbon copy of a letter dated April 20, 1925, from plaintiff to defendant, in which the former advises defendant that it was holding the notes herein sued on, and request was made for prompt payment. The last sentence in this carbon copy reads as follows:

"In case you would prefer, we will have our collector to call and he will have a written order authorizing payment to him."

Across the front of this copy of letter is written in lead pencil: "Miss M. Ritter."

When questioned about this letter Beverung said that J. T. Hodges, the bookkeeper for plaintiff, and the defaulting collector, Clyde Hodges, had come up to the dairy late one night with this letter and told him that he must not pay any more money to Clyde and that they wished to get defendant to sign her name on this letter; that he accordingly, without knowing what the letter contained, had waked up Miss Ritter and had her sign her name in lead pencil across it. In this statement he is confirmed in every detail by Miss Ritter and partially by J. T. Hodges, who admits that he went up to the defendant's place of business with Clyde Hodges on that date and had her sign the letter. When asked why the last sentence was put in the letter, he says that "they could not understand why we were collecting these notes."

The evidence shows that the last two receipts for $50.00 each were given in payment of a note which fell due March 6, 1924, and yet, strange to say, this note was not included in the list of notes due when this letter was written, April 20, 1925.

Lacrouts, a dairyman, who is a close neighbor of defendant and owned the building in which she was doing business, testified that he had bought some cows from Avegno and Company and given a note in payment; that shortly thereafter Clyde Hodges had begged him to pay the note and he had given him the money upon Clyde's giving him a· receipt for the amount and promising to bring the note shortly thereafter; that Clyde had failed to bring the note during the next ten visits and only by the most persistent effort did he finally secure the note. Some time after he succeeded in getting the note, W. H. Hodges, the president of the company, had called at his place and demanded to receive the receipt and the note.

In the course of his able opinion the trial judge aptly uses the following language in referring to this instance:

"Lacrouts' testimony, in my belief, is absolutely true, that he had a note made out to Avegno & Company, it is true, but so are all of these notes made out to Avegno & Company; that Clyde Hodges collected the amount and gave a receipt for it, promising to surrender the note, and only after

long delays and repeated demands on the part of Lacrouts, did Lacrouts get the note. He then testified that Mr. J. T. Hodges came to him, demanding to see the receipt and the note. Now, as Clyde Hodges had collected the money, if Hodges & Company had no interest in it, why was J. T. Hodges going to Lacrouts to find out about the transaction? When Lacrouts left the stand I expected that, instanter, J. T. Hodges would be called to the stand to explain. The failure of the plaintiff to call him to the stand to explain Lacrouts' testimony, in my opinion, is damning to the case.

"I am satisfied that Clyde Hodges did collect the amounts of those notes for the account and benefit of W. H. Hodges & Company, and with their full knowledge and consent, thereby creating him their agent. I would not have believed it had not it been for Lacrouts' testimony, and the failure to have J. T. Hodges explain it. I consider the fact that J. T. Hodges was not put upon the stand to rebut Lacrouts' testimony, either as being the truth, or to explain it away in rebuttal, as damning to the plaintiff's case."

Plaintiff's able attorney in this court argues strenuously that the testimony of defendant and Beverung should not be believed because the last two receipts, dated June 1st and June 8th, 1925, are shown to have represented payments on a note which fell due March 6th, and it is hardly probable that they would have made payments as shown by the receipts on notes not yet due, when they owed this note already past due. However, the record convinces us, as it did the trial judge, that both defendant and Beverung were so ignorant about business transactions that they were just as likely to have paid on a note not yet due as on one already matured, for they seem to have had implicit confidence in Clyde Hodges, and to have fully believed him when he promised to deliver the notes.

Miss Ritter freely admits that she knew very little about the different notes and in fact did not know or understand how many paid notes she had in her possession.

This seems to us preeminently a case for the application of the well known rule that the decision of the trial court will not be reversed on a question of fact unless there is manifest error in its conclusion.

As we have studied the record thoroughly, and find no error, the judgment is, therefore, affirmed.